IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,818

In the Matter of BRENT L. WINTERBERG,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 17, 2021. Six-month suspension.

*W. Thomas Stratton Jr.*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*Brent L. Winterberg*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Brent L. Winterberg, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 1993. This matter involves the filing of a formal complaint, a hearing and findings of a hearing panel, and two subsequent proceedings before this court. The following summarizes the history of this case before the court:

On February 5, 2020, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On November 17, 2020, the respondent filed an answer to the complaint. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on December 1, 2020, where the respondent appeared in person pro se. The hearing panel determined the respondent violated KRPC 1.3 (2021 Kan. S. Ct. R. 325) (diligence); 1.4(a) (2021 Kan. S. Ct. R. 326) (communication); KRPC 8.4(c)

1

(2021 Kan. S. Ct. R. 427) (misconduct involving dishonesty or misrepresentation); and KRPC 8.4(d) (misconduct that is prejudicial to the administration of justice).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

"12. The hearing panel finds the following facts, by clear and convincing evidence:

"13. A.H. hired the respondent in January, 2015, to represent her in a divorce proceeding in the Circuit Court of Clay County, Missouri. On November 30, 2015, a judgment of dissolution of marriage was entered in the divorce proceeding. Among other things, the judgment provided that A.H. was entitled to receive one-half of her ex-husband's employment retirement account. In addition to receiving one-half of her ex-husband's employment retirement account, A.H. was to also receive $4,000, to cover attorney fees associated with the preparation of the post-judgment paperwork including the Qualified Domestic Relations Order (QDRO). Thus, the total amount that A.H. was to receive from the retirement account was $62,698.

"14. The respondent agreed to accept $4,000 to prepare the QDRO. A.H. intended to maintain her portion of the retirement account, less the $4,000 attorney fee, in a qualified retirement account. A.H. paid the $4,000 attorney fee.

"15. Beginning January 12, 2016 and continuing over the following several months, A.H. contacted the respondent to inquire about the status of the QDRO. The respondent assured A.H. that he would be completing the QDRO.

"16. On May 9, 2016, A.H.'s ex-husband lost his job. On May 15, 2016, A.H.'s ex-husband informed her that he lost his job. A.H. immediately called the respondent to convey the information.

2

"17.     On June 4, 2016, A.H.'s ex-husband informed her that he had withdrawn all of the retirement funds from the retirement account. On June 6, 2016, A.H. contacted the respondent and told him that her ex-husband had withdrawn all of the retirement funds from the retirement account. Because A.H.'s husband withdrew the funds early, significant penalties and taxes were assessed.

"18.     The respondent filed a motion for contempt against A.H.'s ex-husband and set the motion for hearing on July 13, 2016. On July 12, 2016, A.H.'s ex-husband provided A.H. with a cashier's check in the amount of $43,889, which reflected one-half of the net proceeds from the retirement account.

"19.     Subsequently, A.H. attempted to contact the respondent by email. The respondent did not respond to A.H.'s email message. As a result, A.H. hired new counsel.

"20.     On September 14, 2016, A.H. filed a complaint with the Missouri disciplinary authorities.

"21.     The disciplinary hearing panel concluded that the respondent violated Missouri Rule of Professional Conduct (MRPC) 4-1.3 (diligence), MRPC 4-1.4 (communication), and MRPC 4-8.4(d) (professional misconduct that is prejudicial to the administration of justice). The panel recommended that the respondent be reprimanded and that the respondent be required to become a member of the Missouri Bar Solo and Small Firm Practice Committee for a minimum of two years and the respondent be required to attend a minimum of three hours of continuing legal education specific to solo or small firm practice management for each continuing legal education reporting period ending on June 30, 2019, and June 30, 2020. The Missouri Supreme Court adopted the disciplinary hearing panel findings of fact, conclusions of law, and recommendation for discipline.

"22.     On May 1, 2018, the respondent paid A.H. $18,809, to compensate her for the $14,809 reduction in her portion of her ex-husband's retirement account and to reimburse her for the $4,000 attorney fee she paid to respondent to prepare the QDRO.

3

"23.    On December 21, 2018, the respondent self-reported his misconduct. In his letter to the disciplinary administrator, the respondent did not disclose that he had been reprimanded for this misconduct in Missouri.

## "Conclusions of Law

"24.    Based upon the respondent's stipulations and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 8.4(c) (misconduct involving dishonesty or misrepresentation), and KRPC 8.4(d) (misconduct that is prejudicial to the administration of justice).

## "KRPC 1.3

"25.    Attorneys must act with reasonable diligence and promptly in representing their clients. See KRPC 1.3. The respondent failed to diligently and promptly represent A.H. The respondent failed to prepare and file the QDRO. As a result of the respondent's misconduct, A.H. stood to lose more than $62,000. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

## "KRPC 1.4

"26.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' Id. In this case, the respondent violated KRPC 1.4(a) when he failed to respond to requests for information regarding the representation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

4

"KRPC 8.4(c)

"27.     "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he failed to disclose in the self-report letter that he had been reprimanded for this misconduct in Missouri. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"28.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to take steps to prepare and file the QDRO on behalf of A.H. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"American Bar Association<br>Standards for Imposing Lawyer Sanctions

"29.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"30.     Duty Violated. The respondent violated his duty to his client to provide diligent representation and adequate communication. The respondent violated his duty to the public to maintain his personal integrity. Finally, the respondent violated his duty to the legal system to refrain from conduct that is prejudicial to the administration of justice.

"31.     Mental State. The respondent negligently and knowingly violated his duties. The respondent knew that he needed to complete the QDRO on behalf of A.H. and

5

he negligently failed to do so. The respondent knew that the basis of the self-report letter was to disclose the misconduct which was the subject of the Missouri reprimand.

"32.     Injury. As a result of the respondent's misconduct, the respondent caused serious potential injury and actual injury. A.H. intended for her share of the proceeds from her ex-husband's employment retirement account be transferred into a qualified retirement account for her benefit. However, because the respondent failed to timely prepare and file the QDRO, A.H.'s share of her ex-husband's employment account was not transferred to a retirement account. Further, because the respondent failed to prepare and file the QDRO, A.H. stood to lose more than $62,000. Luckily, A.H.'s ex-husband provided A.H. with one-half of the proceeds from the employment retirement account, less the taxes and penalties assessed. Further, the respondent mitigated the injury by paying A.H. $18,809 to make A.H. financially whole. The actual injury suffered by A.H. is that the funds were not timely transferred to A.H.'s qualified account.

"Aggravating and Mitigating Factors

"33.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"a.     Prior Disciplinary Offenses. The respondent has been previously disciplined on five occasions.
(1)     In 2000, Missouri disciplinary authorities informally admonished the respondent for violating MRPC 4-1.3 (diligence) and MRPC 4-1.4 (communication).
(2)     In 2006, the respondent participated in the attorney diversion program. In that case, the respondent stipulated that he violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.5 (fees), and KRPC 3.2 (expediting litigation).
(3)     In 2011, the respondent again participated in the attorney diversion program. In that case, the respondent stipulated that he violated KRPC 5.5

6

(unauthorized practice of law) and KRPC 8.4 (professional misconduct) for practicing law after his license was administratively suspended.

(4)     In 2011, the respondent's Missouri license to practice law was suspended because the respondent failed to timely pay his taxes.

(5)     For the instant misconduct, the Missouri Supreme Court reprimanded the respondent. Additionally, the Missouri Supreme court also required that the respondent become a member of the Missouri Bar Solo and Small Firm Practice Committee for a minimum of two years and that the respondent attend a minimum of three hours of continuing legal education specific to solo or small firm practice management for each continuing legal education reporting period ending on June 30, 2019, and June 30, 2020.

"b.     Multiple Offenses. The respondent committed multiple rule violations. The respondent violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 8.4(c) (misconduct involving dishonesty or misrepresentation), and KRPC 8.4(d) (misconduct that is prejudicial to the administration of justice). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"c.     Vulnerability of Victim. A.H. was vulnerable to the respondent's misconduct.

"d.     Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1993. At the time of the misconduct, the respondent had been practicing law for more than 23 years.

"34.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

7

"a.     Absence of a Dishonest or Selfish Motive. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"b.     Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct. The respondent paid A.H. $18,809 so that she did not suffer a financial loss as a result of the respondent's misconduct. It is important to note, however, that the restitution came 19 months after A.H. filed a complaint with the Missouri disciplinary authorities and 10 days before the Missouri disciplinary hearing.

"c.     The Present and Past Attitude of the Attorney as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions. The respondent cooperated with the disciplinary process. While the respondent failed to timely respond to Deborah L. Hughes, deputy disciplinary administrator's April 1, 2019, request and while the respondent did not timely file an answer, the respondent admitted the facts that gave rise to the violations in the answer and the stipulations. Finally, the respondent stipulated that he violated the Kansas Rules of Professional Conduct.

"d.     Imposition of Other Penalties or Sanctions. The respondent has experienced other sanctions for this misconduct. In Missouri, the respondent was reprimanded. Additionally, the respondent paid $18,809 so that A.H. would not suffer a financial loss.

"e.     Remoteness of Prior Offenses. The misconduct which gave rise to the informal admonition in Missouri in 2000 and the misconduct which gave rise to the 2006 diversion agreement is remote in time, but is not remote to the character of the misconduct in this case. Also, the misconduct which gave rise to the Missouri discipline imposed in 2011 and the misconduct that led to the 2011 diversion agreement is remote in time and in character to the misconduct in this case.

8

"35.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42    Suspension is generally appropriate when:

'(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

'(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

"Recommendations of the Parties

"36.    The disciplinary administrator recommended that the respondent's license to practice law be suspended for a period of 90 days. Initially, the respondent made no recommendation. In response to the hearing panel's question, the respondent concurred that a 90 day suspension was appropriate.

"Recommendation of the Hearing Panel

"37.    Based upon the respondent's stipulation as well as the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of 90 days.

"38.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct

9

must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 226(a)(1)(A) (2021 Kan. S. Ct. R. 276). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint to which he filed an answer. The respondent was also given adequate notice of the hearing before the panel and the hearing before this court. He did not file exceptions to the hearing panel's final hearing report.

With no exceptions before us, the panel's factual findings are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2021 Kan. S. Ct. R. 281). Furthermore, the facts before the hearing panel establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.3 (diligence); 1.4(a) (communication); 8.4(c) (misconduct involving dishonesty or misrepresentation); and 8.4(d) (misconduct that is prejudicial to the administration of justice). The evidence also supports the panel's conclusions of law. We, therefore, adopt the panel's findings and conclusions.

On September 14, 2021, this court heard argument from the Deputy Disciplinary Administrator and the respondent based upon the hearing panel's findings and conclusions. At that initial hearing, the office of the Disciplinary Administrator recommended the same disciplinary sanction as the hearing panel. The hearing panel recommended that the respondent be suspended for a period of 90 days as a result of the admitted violations.

On September 22, 2021, prior to taking final action on the joint recommendation, this court separately entered an administrative order suspending the respondent from the

practice of law due to his failure to pay the attorney registration fee for the 2021-22 licensing period, to fulfill the minimum CLE requirements, and to pay the CLE noncompliance fee for the year 2020-21.

As a result, on October 5, 2021, a Show Cause Order was entered ordering the parties to respond in writing no later than October 15, 2021, to the following:

> "(1)     Whether this court can and should take judicial notice of the administrative suspension order for consideration in this disciplinary case; and,

> "(2)     If so, whether and how the administrative suspension order affects each party's respective position presented at the September 14, 2021, oral argument concerning what, if any, discipline this court should impose in the above-captioned matter."

The parties were further ordered to appear before this court by Zoom videoconference on the court's October 28, 2021, 9 a.m. docket for additional oral argument on these two questions and any other related issues.

On October 12, 2021, the Disciplinary Administrator filed a written response arguing this court should take judicial notice of the administrative suspension and that post-hearing events warrant additional sanction. The respondent filed no written response.

On October 28, 2021, having acknowledged receipt of proper notice of the proceeding, the parties appeared before this court. The Deputy Disciplinary Administrator argued that we should take judicial notice of the administrative suspension and further consider the suspension as an additional aggravating factor in determining the appropriate discipline in this matter. Ultimately, the Disciplinary Administrator recommended a six-month suspension with a requirement for a reinstatement hearing prior to reinstatement to the practice of law.

11

The respondent did not oppose the taking of judicial notice of the administrative suspension, its inclusion in the consideration of the appropriate discipline, or the recommended sanction of the Disciplinary Administrator.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017). First, we agree with the parties that under these circumstances, this court has authority to take judicial notice of its own records in considering the appropriate sanction in this matter. K.S.A. 60-412(d) requires that a reasonable opportunity be given to the parties to present information relevant to the taking of notice and the tenor of the matter to be noticed under K.S.A. 60-412(c). That opportunity was given to the parties by the aforementioned Show Cause Order requiring written responses and scheduling and noticing this matter for oral argument.

We agree with the Disciplinary Administrator and find that the respondent's administrative suspension is an additional aggravating factor we will consider in determining the appropriate discipline. The mere timing of the administrative order—occurring in the middle of his disciplinary case—demonstrates disregard for the basic rules which all lawyers must follow as a requirement to practice law. This, coupled with the respondent's admitted misconduct in this case, compels enhancement of the initial joint 90-day suspension recommendation of both the hearing panel and the Disciplinary Administrator.

We therefore adopt the unopposed recommendation doubling the time of suspension to six months effective on the date of this opinion. Further, should the respondent seek reinstatement, he must undergo a reinstatement hearing under Supreme Court Rule 232 (2021 Kan. S. Ct. R. 287).

12

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Brent L. Winterberg be suspended for six months from the practice of law in the state of Kansas, in accordance with Supreme Court Rule 225(a)(3) (2021 Kan. S. Ct. R. 275) for violations of KRPC 1.3, 1.4(a), 8.4(c), and 8.4(d).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 231 (2021 Kan. S. Ct. R. 286) and shall comply with Supreme Court Rule 232.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.